All Does 1-144 v. Conrad & Scherer, LLP Good morning. May it please the Court, I'm Paul Wolfe, the appellant. This appeal is an attorney fee dispute that's related to the previous case. I settled almost all of my cases, so we have a settlement fund. I paid almost all of the settlement already. There's a lien on the settlement fund in the amount of $225,000 plus something under $5,000 of expenses. Before we get there, can you, and we're familiar with the facts of the case, do you agree that we have jurisdiction under the collateral order doctrine or do you not agree? Your Honor, I have to be honest and I don't really agree. I would like to agree. I would like to get this issue resolved. I think it's completely collateral. This has nothing to do with… Well, it's definitely collateral, but that's the whole point of the collateral order doctrine. So under that doctrine, do we have jurisdiction? Well, there's a problem because one of the other elements is that the order has to be effectively unreviewable on appeal from a final judgment. So I can't stand here and say something that's not true. So I think if we were in the first instance, meaning we were sort of wiped of precedent other than the test, I think I might agree with you on that. But yet I think it was last week, at the end of last week, your opposing counsel filed a supplemental authority letter citing a case called Lowe. You saw that? Yes, Your Honor. Okay. Tell me your view on that case. I don't remember the facts of the case, Your Honor, but I think that it's still under the Will case of the Supreme Court. Will versus, I forgot the other party. And this part that says effectively, I know that various courts have said that attorney fee orders are collateral orders and they just said that. We're looking at a lot of old cases that are looking back to the Cohen case. Well, all this stems from Cohen, including the later Supreme Court cases. And there's no doubt that under what I'll call more modern doctrine, that if we were reviewing this anew, it would not work. But we're bound by our prior precedent in here. And the facts of Lowe, it's a short opinion. I won't go through it all. But it deals with ruling on an equitable lien to award attorney's fees in part to one side and not to the other, and one of the attorneys appealing that, which seems very, very similar to what we have here. There may be some differences that I'd like to explore, but it seems very similar. And there we concluded pretty summarily that under Cohen it met the doctrine of allowing an immediate appeal, even though there were still equitable issues to be resolved in the case. It seems very similar to here, and I'm having trouble distinguishing that fact from this case. Well, I'm happy with that, Your Honor. That benefits me. There's no point in having all this money tied up in the court. I just don't know how to get around, because the Will case is what superseded the Cohen case. So a lot of these cases are all looking back at Cohen. And I don't know why, but the Cohen case doesn't say that. It doesn't say that the order has to be effectively unreviewable on appeal from a final judgment. So that came back in, in the Will case in the Supreme Court. So I'm not going to stand here and argue that this court changed the law and the circuit. I would rather have the court decide that issue. Okay. All right. And I interrupted you on the merits, so please go ahead. Okay. Thank you. So I think this is a fairly simple appeal. The attorney fees liens are creations of common law. So this attorney fee dispute is under Florida common law. So the case that I found, which appears to be the controlling case, is Billingham v. Thiel, 107SO2D238. Yeah, it's an old one. So that gets to the issue of entitlement and the merits of entitlement. But the problem is there's a threshold issue I think we have to get through. And that is that under a local rule, I think it's 7.3 or 7.03, it required certain things to happen before entitlement was litigated here before the magistrate judge. And you concede those things didn't happen, and I think you were very candid about it, and I appreciate that. And that didn't happen, and under the Southern District of Florida's rules, that constitutes a waiver. So that's one issue we have to talk about. The second one is we have law, and it stems from both the statute and the rules dealing with magistrate judges and R&Rs, where if there is a problem with a magistrate judge's recommendation, there needs to be an objection made to the district court with specificity to allow the district court to rule. And where that doesn't happen, our rule, 3.1, says that that is a waiver. Here I've read the objections to the magistrate judge's R&R, and I don't see anything contesting the finding that the local rule had not been complied with and there was waiver on the local rule. And so that seems like a double waiver that we have to contend with. So what do I make of all of that? Well, again, I mean, what can I say? You know, they sent me an e-mail. They said they wanted to confer pursuant to local rule 7.3, and I replied to the e-mail that I didn't think we needed to, you know, have a meeting because they're not entitled to any fees because they don't represent any of these people. They don't have a contract with anyone. They've met 13 of them. They did some work on two cases that was not authorized by me or even known by me at the time. So that was why I didn't confer. I know, but you didn't even say that. I've seen the communication. It's just we've conferred. I don't feel like doing this over Zoom. It's something like that. I'm paraphrasing. But what you've just told me sounds like a great objection to each of the line items, saying I have no problem with any of the individual line items. I just think there's an entitlement threshold issue that we need litigated. But that stuff needs to happen so that the issues can get narrowed down for the judge. That's the purpose of this rule. Without that happening, how is the magistrate judge wrong, even if there was a failure to look at the rule through negligence, that that constitutes a waiver of litigating the entitlement issues? Well, obviously it was a mistake. I wouldn't be here if I didn't make that mistake. I think that the court still should have looked at the entries for reasonableness. The district court, there's no doubt that that's the case. Local rule requires the district court to do that. I'm happy to talk about reasonableness issues, but you started off by talking about the Billingsley and the entitlement stuff because there wasn't a contract. There wasn't an agreement between them and the clients here. That seems to be entitlement issues that have the waiver issues. I'm happy to talk about reasonableness with you if you want. Yes, we can talk about reasonableness. Well, I haven't given up on the entitlement issue because there's no contract. And if this court says, you don't need a contract with this person in order to recover in quantum merit, that conflicts not only with the case law that I just cited, but also with the ethics rules. So this court would be holding, well, there was a waiver, so it doesn't matter that this law firm actually has no litigation. Well, I think what we would be saying is any issues regarding that have been waived twice over without deciding that issue. But I think that's the way that we could decide it without doing what you've just suggested. I mean, it sounds terrible to say that it's a waiver, but what was I going to say to the magistrate judge? I did not confer with them the way that I was supposed to confer. So I don't know how many times I need to be penalized for that. I think that they do not represent these clients. The clients did not ever agree that Conrad and Scher could represent them. And I think we're focused on a procedural problem, and I admit my mistake. And then after that, we had a mediation. You know, the court has a mediation program. So then I went through all of their line items. I didn't come up with a dollar amount. Can I stop you there? There's some pretty strong rules about talking about the contents of mediation, and I don't want you to violate those rules. I'm going to leave to you your own ethical obligations, but I'm a little bit familiar with those rules, and I think the contents of mediation are not something that we generally discuss. We keep a separation between those two things. Okay, well, you know, I filed it in the record, what my objections were to their line entries. But I didn't do it when I was supposed to do it. So, you know, I did it in conjunction with the mediation. I filed it in the record. You know, there were a lot of entries that named other plaintiffs that didn't name those 1 to 144. There was a lot of work that was adversarial to me. You know, we had a lot of dispute over who was going to represent these clients. So they billed me for that even though the court ruled in my favor. The court disqualified. They didn't bill you. They billed the clients, and it's coming out of money that's in a fund for who needs to be divvied out. It's not billing you. Yes, yes, I'm sorry, yes. Can I ask you a question? This is more relevant to the jurisdictional issue. But what is going on? So am I understanding that some of your clients are continuing with litigation and some have settled, or have all of your clients settled? I had about 2,500 cases. That's 2,500 wrongful death cases against Chiquita. And I think we had 55 who rejected the settlement. We had about 2,300 that have settled. We had about 60 that their cases were rejected by the third-party administrator of the settlement fund. So those also did not settle. So I would say I have about 115, 120 cases that did not settle. And what are the ones that did not settle? Are they going forward through the litigation process? Yes. Some of them are bellwether plaintiffs for the next trial. And the relevance of this is that the district court's determination about the fee award is going to be relevant to those that are going forward as well. So if you go forward and win judgments with respect to those claimants that are going forward, the fee, the lien issue that the district court resolved here will apply to that as well, right? I suppose it would have to be a different lien, really, because the lien isn't the same. It wouldn't be this specific lien, I guess, but the determination about who has what fee would apply to those two? Well, the settlement just had a total amount, and it had one-third fees for the attorney. So I did make quite a bit of money on that. But the fees are not determined on who accepts the settlement and who doesn't accept the settlement. I guess what I'm trying to figure out is if you go forward and you win judgments and those judgments are paid, is there going to be anything different about the attorneys' fees dispute then, about those judgments, than about the settlement that's happening right now? There could be. I think there are at least a couple or at least two or three out of the original 144 that did not want to settle. So that was, you know, I looked into that for the jurisdictional argument, so I can't say that those cases have ended. In other words, there's no final judgment here? There's no final judgment for at least two. In fact, as I understand it, the way the district court set this up was, there's notice of settlement, I'm entering an order, putting this pot of money in a third-party administrator, and we're waiting 18 months for you, because some of these folks are hard to reach, to reach out to all these folks, to notify them, and to let them know whether they're going to opt in or not. For those that are not opting in, we will then handle their cases, right? Yes, and some of them actually are in the next Bellwether trial. So, yeah, we do have some that are continually, and they're just continually litigation. I don't know if there's going to be further trials, if there's going to be another settlement discussion. I don't know. They just didn't settle. Let's just assume, the hypothetical, I guess, would be like, let's just assume there's another settlement, right? So there's another settlement, another pot of money is created. Does the fee dispute just reoccur at that point? Yeah, I imagine there would be, yeah. So that's the final judgment issue. I mean, I'm glad if there's, you know, if there's new law, you know, this low case I think you mentioned. But, you know, I think we still don't have a final judgment. So I hate to argue that because it's against my own interest. I'm not going to press you on it then. Okay, thanks. The other point I really wanted to make was that there's no benefit to these people. I'm getting back to entitlement, but nobody got any benefit from this work that Conrad and Cher did. They didn't tell me about it. They deposed two clients without telling me that they were doing it. And they've only contacted 13 of them. And the two that they defended their depositions, both of those people lost in summary judgment. So there's nothing to recover against. And they can't recover against the settlement. I mean, I invited them. I invited all the other plaintiff counsel to join the settlement with me. It would have been better to have a global settlement. But they didn't want to. So now they want part of the settlement. So, you know, I conceded the waiver. But I think that's the only thing that I've really done wrong in this case. Thank you. Okay, thank you, Your Honor. Good morning. Eric Hager for Eppley, Conrad, and Cher, which I'll refer to as CNS today. I'd be happy to start with the jurisdictional issue. Please. We do think that Lowe controls and that it requires the court to find jurisdiction here. Similarities, obviously, with Lowe. I want you to address that. So in Lowe we said that the fact that there are some equitable issues still pending in the district court doesn't preclude us from reviewing the attorney's fees dispute. But I gathered from Lowe, and this is what I want you to make sure you address, is that there wouldn't be more attorney's fees arising from those still pending. So you had, you know, you had something that was resolved that there were attorney's fees attached to. And then the thing that was, like, still hanging around was this equitable stuff. It seems like here this attorney's fee stuff is going to happen more in the district court. And that's, I guess, my concern. I agree with you on your reading of Lowe, although the opinion's not too lengthy, so it's not exactly clear what happened. But what I can tell you in this case is that these attorney's fee issues as to this pool of plaintiffs, the Doe's 1 to 144, are not going to arise again. What happened below is that we submitted the time that we expended on those cases for our quantum merit recovery, which was, of course, reviewed by the magistrate judge and the district court judge. And then the district court awarded us our fees to be collected from a pot of money, a pool of money, that were set aside as Mr. Wolf's attorney's fees. And so that pot of money will either be kept by Mr. Wolf or part of it will come to Conrad and share. But we are not going to be seeking an additional lien on additional recoveries that may happen for the small handful of Doe's 1 to 144 who are still active. Can I ask you, does it matter? Why does it matter for the collateral order doctrine? In other words, as I understand the collateral order doctrine, it isn't case-specific, but it's categorical to the type of order. And so if the categorical type of order is one that meets the Cohen elements and meets Cohen, then if this is all, the only question is whether this is that type of order. Is that the way the analysis works, or do you look at something else that's case-specific? I think there could be case-specific distinguishing factors. I think the starting point is to look at the category. And here we can look at the low case. We can look at match and match, one of this Court's unpublished decisions, which find that charging liens do fall within the collateral order doctrine. Second Circuit, the Eighth Circuit. I thought in Smile Direct, which is really our most recent sort of larger discussion about this, we said that these are sort of reviewed categorically. In other words, we don't really look at, like, the intricacies of what the procedural posture is in this particular case or that particular case. But there we dealt with Parker immunity and ultimately found it didn't meet the elements. But what we said was we just review Parker immunity generally. We don't look at whether it was part of the motion to dismiss or summary judgment there or any particular place. Does that matter in how we review whether there's an appeal from an attorney's fees judgment based on an equitable lien from low, which we said was appealable and fell within the elements of Cohen to here? I'm having trouble seeing how categorically this would be different from that situation. But maybe it is. Right, and I'm not familiar with the case that you just cited. But it sounds as if it very much would support our position here that charging liens as a general matter do fall under the collateral order doctrine. So I'd like to now get into the merits. And I think I'd probably be best off working my way backwards through some of the issues. And so I'm going to start off with the last issue. Sure. So the first step of collateral order doctrine is that the order has to conclusively resolve an issue. Right? And I guess the point of my questioning is if they're going to continue to be attorney fee disputes in the matter of this case, between you and him, does this order conclusively resolve the issue? And I think your response is that there aren't going to be any more attorney fees disputes in this case between you and him? As to that pool of clients, we had jointly represented at one point the DOE's 1 to 144. Correct. There will not be further attorney fees disputes. But what about the additional plaintiffs that are going forward? The additional plaintiffs fall within that pool of the DOE's 1 to 144. We are not going to be seeking additional attorney fee liens on any of those cases. We submitted all of our time in relation to that entire pool. I see. It's done. In other words, you stopped representing them in 2020.  And you submitted all of your bills for everybody in that pool between, I think, 07 or 08 to 2020. Correct. And we had our expert go through all those time entries, recommended which ones he thought were compensable. We followed his recommendation in submitting the time we sought to recover. And you have been awarded, I know there are some reductions, but you've been awarded for all of that time. Correct. We've been awarded about 90% or 95% of it. Thank you. You're welcome. And so if I could start with the last issue that the appellants raised, which is the unclean hands issue. We think that fails for two simple reasons. Does that fall under entitlement? In other words, is the unclean hands argument... Let me back up. As I understand his motion, his motion is twofold. One is this fails because there wasn't a contract between you and them, and then that gets the express or implied contract question. And the other is it fails because quantum merit is an equitable remedy, and you have acted inequitably. I'm not going to get into the merits of that at the moment. But I guess what I'm asking is, is the unclean hands issue, the equity issue of whether you should get quantum merit relief an entitlement issue? It's not clear from the briefing. We did not brief that issue. I don't think appellants did either. I would submit that it goes to the amount of fees that should be awarded. For example, in the district court's R&R, one thing that is mentioned that even if you apply the unclean hands defense, it does not mean that the award goes to zero. It may mean that you reduce the award depending on how you feel the conduct is. So I don't think it goes to entitlement. I think it goes to amount. We think on the unclean hands defense, two simple issues why we win. First of all, waiver. It's this waiver issue that you raised previously, Judge Luck. In appellant's objections to the report and recommendation, they don't object to the unclean hands finding that there was no injury. They needed to do that. They didn't do that. But we can go beyond that. We can go to the merits of this injury issue. And let me be clear here. The law does require an injury for the unclean hands defense to apply. We cited the cases in our brief at page 20. And Mr. Wolfe did not prove that CNS. Can I go back to the objections? This is at docket entry 3902 at page 8. There's a whole heading which says that has been provided sworn testimony that Collinsworth, as a senior partner at CNS, offered up to $5 million for his testimony, depending on the outcome of the case, and that all of that evidence should indicate that there shouldn't be any fees here because of the way that CNS acted. How is that not a sufficient objection to preserve that? Because what he's talking about is he's raising his general complaint about the alleged misconduct. But he's not doing what the unclean hands defense requires. That may be a failure of unclean hands under Florida law, but that's not a failure of objecting. I read that as a clear objection from the magistrate judge's report and recommendation to the district court that you should not get any fees because of the way that the firm acted. What the 11th Circuit rule requires, and I'm quoting here from the end of the R&R, where the district court said failure to timely file objections shall constitute waiver of a party's, quote, right to challenge on appeal the district court's order based on unobjected to factual and legal conclusions. So what I'm saying is not that he didn't raise the issue of unclean hands generally. What I'm saying is he didn't object to the factual conclusion that he was not injured. The R&R said he was not injured. He did not prove injury. He does not object to that specific factual conclusion. But going back to the merits here, he hasn't shown injury. He has to show injury. He hasn't shown putting aside waiver. What he's argued in his brief is essentially that whatever happened in the first Bellwether trial somehow prejudiced him. He complains about certain evidentiary rulings. But what he says, what he says in his opening brief, this is at page 7, quote, the first Bellwether trial played no role in the amount of the settlement. He's admitting he was not affected in any way by the first Bellwether trial. But I want to go a little further here too and talk about the accusations that Mr. Wolfe does make in his brief to underlie his unclean hands offense. First off, the accusations are not credible. He has no personal knowledge about what he is saying. For example, in our pretrial hearing just before trial, when this issue was discussed, Mr. Wolfe stated, quote, I don't have personal knowledge of any of this. That's at the appendix, page 824, lines 4 to 5. More importantly, these accusations were soundly rejected below by Judge Mara's April 17, 2024 order. That's DE 3649. Judge Mara studied the record. He had 10 years of filings and submissions under his belt. He reviewed the voluminous record. He reviewed loads of emails. He held a hearing on the matter in April 2024. And what was his ultimate factual finding? It was that Mr. Collingsworth did not pay witnesses in this case. That's at DE 3649 at 4. So as this order reflects, Judge Mara considered and rejected Mr. Wolfe's accusations of wrongdoing. Now, when you actually get down to it and look at the record, I don't think Mr. Wolfe really disagrees with Judge Mara's findings. For example, Judge Luck, you raised one of the witnesses earlier, Mongones, in the prior argument. But what Wolfe says about Mr. Mongones is, quote, I cannot prove the bribery. That's at Appendix 835, lines 3 to 4. And if this Mongones was such an important witness to Mr. Wolfe, to Chiquita, why wasn't he deposed? He was never deposed. We actually sought, the plaintiffs sought to depose him. Chiquita objected to that. Chiquita objected to the deposition of Mr. Mongones. And there was no effort after he wasn't deposed to bring him to trial, for example. Now, Chiquita says that they could not find him. I don't think that's supported by the record at all. I think the record will reflect that Mr. Mongones was incarcerated. And Chiquita had plenty of time to find, depose, bring Mr. Mongones to trial, do it via video, whatever you might imagine, because this Mongones issue was raised by Mr. Wolfe and Chiquita going back ten years before trial. Ample time to address this. Now, I see I have three minutes. Can I actually ask sort of just a theoretical question here about the way this attorney's fees dispute has arisen? Your theory is that there's a contract between your firm and the client's, right, the Doe's, that gives you right to attorney's fees. But if I understand correctly, the lien that you filed is against the portion of the settlement that is Mr. Wolfe's attorney's fees or would be attorney's fees for him. Just explain to me why a contract with the Doe's, let's just assume you have one where the Doe's have promised you attorney's fees, why would you have a right to get the settlement portion of attorney's fees that would otherwise be Mr. Wolfe's? Does that make sense? Yes, I do. I appreciate and understand the question. When we filed our motion, we did not direct it at a specific pot of funds. When Mr. Wolfe's settlement with Chiquita was approved, the court set aside a fund to come out of Mr. Wolfe's attorney's fees to satisfy any lien. Nobody objected to that. Mr. Wolfe did not challenge that. So when we brought our motion, it was naturally understood to be directed to that pot of money. When the R&R and later the district court awarded us our fees, it was also directed at that pot of money. Mr. Wolfe did not object to the R&R on that ground saying that the money should be attached to the client funds rather than to his attorney's fees. So we would submit to the court that Mr. Wolfe has waived any objection to that. He hasn't raised it. Yeah, that's definitely not been raised. I guess I'm trying to figure out, is this the way? I mean, you both, I think, do this, have much more knowledge about the way this stuff works than I do. This doesn't seem the way this should normally work, right? Normally an attorney's fees lien attaches to a settlement that would otherwise go to the client, and you wouldn't have two attorneys fighting about it, right? You'd have the client saying, you attorney, don't get any of my money. Is that usually the way this would go? Yes. Usually the way it goes is that the lien attaches to funds that the client has or the client pool has. This was somewhat unorthodox, but I don't think inappropriate. And so I did not have a chance to get into the two other issues that we have on appeal, but on entitlement, we think clearly there was a waiver. I don't need to discuss that much. And then on whether reasonableness was considered, I'd ask the court just to take a look at the R&R. Reasonableness was very much considered. If there are no further questions, I will sit down. I only have a couple of points, and I can, of course, answer any more questions. First, I am not prepared to discuss Mr. Mangones. I think that's part of the other appeal, and I was not prepared to really argue about whether he could have been deposed or why he was not deposed. I think on Judge Brasher's last comment, I think that the plaintiffs actually do have a say in who gets the attorney fees from their settlement, and I've met all of them. Conrad and Cher did some work on two of the cases, and they have met or communicated with, by phone, 13 out of 144 people. So I would submit that they don't have anyone's permission to do anything, that these people, the clients, the plaintiffs, do not know who Conrad and Cher are, except for 13 of them. As far as additional injury, I don't think that's correct, and whether unclean hands applies solely to the entitlement, I would look at it this way. You could look at the unclean hands versus what I did wrong, which was I failed to confer. I just said, no, I don't want to have a meeting with you. So maybe it also could be a defense to their argument as purely a procedural argument, that I failed to confer. So I know I'm not supposed to discuss mediation, but I did try to confer later on.  That may be all I have. Oh, as far as that I never opposed, you made some comments about that I never opposed some of the judge's orders. I think the court can look at my objections to the report and recommendation of the magistrate judge. I didn't waive anything else except that I conceded that what I did with my email saying, no, I don't think we need to confer, that that was insufficient. That was the only issue that I waived. And as far as waiving the magistrates, finding that there was no bribery, there was nothing like that. What I wrote in my objections was that I'm not going to fault the magistrate judge for that, because the judge excluded a ton of evidence. And in fact, I caused a problem at the final pretrial conference, because just before the first Bellwether trial, I stepped up to the podium and introduced six exhibits that were damning evidence of witness bribery in this case. And I don't think the judge really wanted to hear that. Chiquita said that they wanted to hear the evidence, and then the judge said, well, now I have to listen to it. So I introduced a ton of evidence on that. And no, there was no finding, but it is a related case. And the Drummond case is related to this case because of two people. One is Ivan Otero, and he is the conduit for paying the witnesses. And another is Albert Van Bilderbeek, and he's the source of the funds, which originally came from this terrorist group, the AUC. That is the other part of this case that is really offensive, is that the Plaintiffs' Counsel borrowed a million and a half dollars. And whether it was Terry Collingsworth or his firm, Conrad and Share, or the entire group of Plaintiffs' Counsel, I haven't worked with them for over ten years because I brought this issue up of the witness bribery. And that just resulted in a $256 million verdict about a week ago against Mr. Collingsworth. So that's the supplemental authority that we introduced. You're over your time now, Mr. Wolf. Okay, thank you. Thank you. Thank you.